JC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Norberto Elias Evans Villalobos,

Petitioner,

v.

Luis Rosa, Jr., *et al.*,

Respondents.[1]

No. CV-26-04120-PHX-JJT (CDB)

**ORDER**

Petitioner Norberto Elias Evans Villalobos, who is proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus (Doc. 1) under 28 U.S.C. § 2241 challenging his immigration detention. The Court ordered Respondents to show cause why the Petition should not be granted (Doc. 4). On June 22, 2026, Respondents filed a Response (Doc. 7), to which Petitioner has replied (Doc. 17). For the reasons set forth below, the Court will

[1] Respondents contend in a footnote that all Respondents other than the warden should be dismissed as improper. (Doc. 7 at 1 n.1.) "[I]n habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *see also Doe v. Garland*, 109 F.4th 1188, 1195-96 (9th Cir. 2024). But *Padilla* and *Doe* enforce that rule against petitioners who fail to name their immediate custodian at all, and each observes that there is "generally"—not invariably—"only one proper respondent." *Padilla*, 542 U.S. at 434; *Doe*, 109 F.4th at 1195. Petitioner named his immediate custodian, so the defect those decisions address is absent. Because judgment will be entered and this case closed, the Court need not decide whether the remaining Respondents are properly named.

dismiss Ground One without prejudice for failure to exhaust administrative remedies and will deny the remaining Grounds.

**I. Background**

Petitioner is a native and citizen of Panama and a citizen of Canada. (Doc. 7-2 at 3.) He was admitted to the United States at the Nogales, Arizona port of entry on January 24, 2025 as a B-2 nonimmigrant visitor for pleasure, with authorization to remain until January 26, 2025. (Doc. 7-1 at 2; Doc. 7-2 at 4.) He remained in the United States after that date. (Doc. 7-1 at 2.)

On September 15, 2025, Petitioner was arrested by the Tucson Police Department and booked into the Pima County Jail on charges of Indecent Exposure to a Minor, Disorderly Conduct Language/Gesture to a Minor, and Disorderly Conduct Language/Gesture. (Doc. 7-2 at 4.) The Pima County Jail declined to honor an immigration detainer. (*Id.*)

On October 14, 2025, officers arrested Petitioner at his residence in Tucson, Arizona. (Doc. 7-2 at 3.) The Form I-213, dated October 14, 2025, states that "[a]gents/officers had a signed Form I-200, Warrant of Arrest, for EVANS," that officers "approached the parked vehicle wearing clearly marked law enforcement vests and identified themselves as 'immigration officers' giving names and showing identification," and that officers "told EVANS they had a warrant for his arrest." (*Id.*) The same day, the Department of Homeland Security served Petitioner with a Notice to Appear charging him as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B), on the ground that he remained in the United States longer than permitted after his admission as a nonimmigrant. (Doc. 7-1 at 2.)

On December 18, 2025, Petitioner appeared before an Immigration Judge for a custody redetermination. The Immigration Judge denied the request, finding that Petitioner "has not met his burden as to flight risk or danger." (Doc. 7-3 at 2.) Both parties reserved appeal. (*Id.* at 3.)

On January 29, 2026, Petitioner married a United States citizen. (Doc. 17 at 24.) On February 19, 2026, the Tucson City Court granted the State's motion to dismiss the criminal complaint against Petitioner without prejudice.[2] (*Id.* at 29.) On February 26, 2026, United States Citizenship and Immigration Services issued a receipt notice for a Form I-130, Petition for Alien Relative, filed on Petitioner's behalf by his spouse. (*Id.* at 22.)

On March 23, 2026, the Immigration Judge again denied a change in custody status. (Doc. 17 at 34.) Both parties reserved appeal, and the form states that appeal was due April 22, 2026. (*Id.* at 35.)

The record contains a May 30, 2026 briefing notice from the Board of Immigration Appeals ("BIA"). (Doc. 7-4 at 2.) The notice identifies the "Type of Proceeding" as "Removal" and the "Type of Appeal" as "Case Appeal," and it sets briefs due June 24, 2026.[3] (*Id.*)

## II. Discussion

### A. Applicable Detention Statute

The Immigration and Nationality Act ("INA") supplies several statutes authorizing the detention of aliens placed in removal proceedings, including 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023). "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

---

[2] The State's motion stated that "[w]hile probable cause exists for arrest, there is unlikelihood of success at trial." (Doc. 17 at 29.)

[3] The parties dispute the subject of that appeal. Respondents state that Petitioner "appealed his bond denial to the [BIA] and briefings are due on June 24, 2026," citing the BIA's May 30, 2026 briefing notice. (Doc. 7 at 2; Doc. 7-4 at 2.) Petitioner denies that he appealed the denial of bond and states that the appeal he took was from an order of removal. (Doc. 17 at 5.)

Here, it is undisputed that Petitioner is detained pursuant to 8 U.S.C. § 1226(a). (Doc. 7 at 1; Doc. 17 at 7-8.) Section 1226(a) is the "default rule" for the detention of aliens "already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018). Detention under 8 U.S.C. § 1226(a) is discretionary. The statute authorizes but does not require detention, and it expressly permits release on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Its implementing regulations provide for custody redetermination hearings before an Immigration Judge. 8 C.F.R. §§ 236.1(d), 1236.1(d).

**B. Jurisdiction**

District courts have jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are "sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020). Although 8 U.S.C. § 1226(e) limits judicial review of the Attorney General's discretionary judgment regarding the detention and release of an alien, it does not "preclude habeas jurisdiction over constitutional claims or questions of law," and "[c]laims that the discretionary [bond] process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)).

The Court therefore "has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, No. 18-cv-04800, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) (explaining that although the IJ's discretionary bond determination was not reviewable in federal court, *see* 8 U.S.C. § 1226(e), the court has "jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [the petitioner's] agency proceedings, including any claimed due process violation"); *Benipal v. Rokosky*, No. CV-26-01306-PHX-RM (CDB), 2026 WL 1355010, at *6 (D. Ariz. Apr. 23, 2026) (claims challenging the procedural adequacy of a bond

hearing are reviewable), *report and recommendation adopted*, 2026 WL 1352061 (D. Ariz. May 14, 2026).

Jurisdiction, however, is not the end of the inquiry. An alien who wishes to challenge an Immigration Judge's custody determination must typically first appeal that determination to the BIA. When a petitioner has not done so, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011); *see also Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) (requiring exhaustion of constitutional claims that the BIA can review on appeal). The following section sets out the standards that govern the exhaustion requirement and applies them to Ground One.

### C. Ground One: Petitioner Has Not Exhausted His Administrative Remedies

"The doctrine [of exhaustion] provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *McKart v. United States*, 395 U.S. 185, 193 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). In other words, an exhaustion requirement "means using all steps that [an] agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis omitted).

"Administrative exhaustion can be either statutorily required or judicially imposed as a matter of prudence." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Here, Petitioner seeks habeas relief under 28 U.S.C. § 2241, which does not explicitly require administrative exhaustion. However, the "Ninth Circuit requires prudential exhaustion in habeas challenges to decisions by IJs, including bond determinations." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citing *Leonardo*, 646 F.3d at 1160; *Sun v. Ashcroft*, 370 F.3d 932, 935 (9th Cir. 2004); *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018)). Exhaustion is required "because

agency expertise is often needed to generate a proper administrative record, because relaxing exhaustion would only encourage detainees to deliberately bypass available administrative remedies, and because administrative review can often correct the errors alleged—eliminating any need for federal habeas review." *Fan v. Bondi*, No. 5:25-cv-3619-SK, --- F. Supp. 3d ----, 2026 WL 2276462, at *9 (C.D. Cal. Aug. 6, 2026) (citing *Puga*, 488 F.3d at 815).

Here, Ground One alleges that the Immigration Judge "abused her discretion and violated Petitioner's Fifth Amendment due process rights when he was denied a bond hearing on or about March 23, 2026." (Doc. 1 at 7.) The record, however, shows that Petitioner twice obtained a custody redetermination from the Immigration Judge—the first on December 18, 2025, and the second on March 23, 2026. (Doc. 7-3 at 2; Doc. 17 at 34.) It is undisputed that the BIA has not ruled on either determination. (Doc. 1 at 7; Doc. 7 at 2.) Ground One is therefore unexhausted.

A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025) (quoting *Aden*, 2019 WL 5802013, at *2). As explained below, the Court finds that Petitioner has not carried that burden.

In asserting that exhaustion should be waived, Petitioner first argues that the administrative remedy is inadequate because the BIA "cannot decide Constitutional issues." (Doc. 17 at 5.) Although "[a]n exception to the exhaustion requirement has been carved for constitutional challenges to the Immigration and Naturalization Act and INS procedures," the "key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013). That is, a petitioner "must

exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal." *Rojas-Garcia*, 339 F.3d at 819.

Any asserted procedural error in the Immigration Judge's December 18, 2025 or March 23, 2026 determinations is correctable by the BIA on appeal. 8 C.F.R. § 1003.19(f); *see Loba L.M. v. Andrews*, No. 1:25-cv-0611-JLT-SAB, 2026 WL 710307, at *8 (E.D. Cal. Mar. 13, 2026) ("Complaints about the conclusion the IJ reached must be presented through the normal immigration appeal process."); *Morgan v. Gonzales*, 495 F.3d 1084, 1090 n.2 (9th Cir. 2007) (procedural due process claims "must be raised before the BIA because the agency does have the power to adjudicate procedural due process claims"); *Sun*, 370 F.3d at 944 n.18 (explaining that if "an alleged procedural error could have been challenged before the BIA and was not, we lack jurisdiction to review it"). Because the BIA can decide the claim Ground One presents, the administrative remedy is not inadequate.

"[T]here is no exhaustion requirement if resort to the agency would be futile." *SAIF Corp./Oregon Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir. 1990). Here, Petitioner argues that an appeal would be futile because the BIA is bound to apply *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and to find his detention mandatory under 8 U.S.C. § 1225(b)(2). (Doc. 17 at 6.)

Yet, in this case, both parties agree that Petitioner is detained pursuant to § 1226(a). (Doc. 7 at 1; Doc. 17 at 7-8.) Therefore, *Matter of Yajure Hurtado* does not apply. Petitioner has not shown that any BIA precedent would require the BIA to treat detention under § 1226(a) as mandatory or otherwise to deny his appeal.

Nor can futility rest on a prediction that the BIA is unlikely to rule in Petitioner's favor. Recourse to the BIA is futile where "the agency's position on the question at issue appears already set." *Hernandez*, 872 F.3d at 989 (quoting *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 747 (9th Cir. 1991)) (excusing exhaustion of a class-wide challenge to the government's bond-setting policy where a series of unpublished BIA decisions showed that the BIA's position on the question presented—whether ability to pay is a relevant bond factor—was already set); *see Santos*

*Barrera v. Semaia*, No. EDCV 24-1617 PA (PVC), 2025 WL 2684198, at *4 (C.D. Cal. Mar. 5, 2025) (futility turns on whether the petitioner would have to argue against established BIA precedent or another specific rule the BIA is unlikely to change, not on generalized predictions that the BIA will rule unfavorably). Petitioner identifies no BIA precedent or other authority suggesting that the BIA's position on the question Ground One presents is already set.

In his Reply, Petitioner asks the Court to order his immediate release and to enjoin Respondents from re-detaining him without notice and a pre-deprivation hearing, "so as to keep [R]espondents from causing more irreparable harm to him[,] his family and others like him." (Doc. 17 at 7.) To the extent Petitioner asserts irreparable injury as a basis for waiver of the exhaustion requirement, he has not developed the assertion. Detention that follows a bond hearing is not by itself irreparable harm sufficient to waive the exhaustion requirement. *See, e.g.*, *Aden*, 2019 WL 5802013, at *3; *Reyes v. Wolf*, No. C20-0377JLR, 2021 WL 662659, at *3 (W.D. Wash. Feb. 19, 2021) (continued detention while a BIA appeal of a bond denial is pending does not, without more, establish irreparable injury), *aff'd sub nom. Diaz Reyes v. Mayorkas*, 854 F. App'x 190 (9th Cir. 2021). *But cf. Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *7 (N.D. Cal. May 19, 2020) (excusing exhaustion where continued detention was exacerbating the petitioner's diagnosed post-traumatic stress disorder). An argument that further delay would itself cause harm "begs the constitutional questions presented in his petition by assuming that petitioner has suffered a constitutional injury." *Francisco Cortez v. Nielsen*, No. 19-cv-00754-PJH, 2019 WL 1508458, at *3 (N.D. Cal. Apr. 5, 2019). As another district court has explained,

> Even assuming *arguendo* Petitioner had shown that immediate federal judicial review of his claims would be *more efficient*, this is not the same as demonstrating that the available administrative processes are inadequate and inefficient. Indeed, a version of Petitioner's argument could be made by virtually every litigant attempting to bypass the administrative process by proceeding directly to the federal courts. Permitting

> Petitioner to avoid the administrative scheme based solely on the additional time required to pursue administrative remedies would create an exception to exhaustion that would swallow the rule.

*Martinez v. Scott*, No. 2:25-cv-1538-TSZ-GJL, 2025 WL 2689844, at *6 (W.D. Wash. Aug. 27, 2025) (emphasis in original), *report and recommendation adopted*, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025); *see also Fan*, 2026 WL 2276462, at *15 (recognizing that there are "compelling cases where continued detention pending a lengthy BIA appeal would constitute irreparable injury," but that the exceptions "cannot swallow the rule").

*Leonardo* is instructive. There, a detained alien received a bond hearing, was denied bond, and sought review of the Immigration Judge's decision in the district court without first appealing to the BIA. 646 F.3d at 1159. The Ninth Circuit held that "[t]his short cut was improper" and that the district court should have dismissed the petition without prejudice or held it in abeyance pending exhaustion. *Id.* at 1160. The exhaustion rule is not an empty formality. As the court explained in *Fan*:

> [T]o enforce exhaustion—in a case like this one especially—is not to relegate detainees to a phantom zone of administrative bureaucracy. Nor is it to diminish in any way the real-world consequences of physical confinement. It is only to say that, in the mine-run of immigration detention cases, exhaustion is essential to ensuring that federal habeas courts remain Article III courts of limited *collateral* review—not de facto administrative boards of *direct* review functionally no different than the BIA.

*Fan*, 2026 WL 2276462, at *15.

In sum, Petitioner has not carried his burden of showing that any *Laing* factor excuses exhaustion of Ground One. Consistent with *Leonardo*, Ground One will be dismissed without prejudice.

That leaves Grounds Two, Three, and Four. Exhaustion is not required as to those Grounds because they present claims that the BIA has no authority to review: the lawfulness of Petitioner's arrest and the constitutionality of his detention. *See Sola*, 720

F.3d at 1135. The Court therefore reaches those Grounds and, for the reasons explained below, will deny them.

**D. Ground Two: The Manner of Petitioner's Arrest Does Not Entitle Him to Release**

Ground Two alleges that immigration officers arrested Petitioner without a warrant and did not follow 8 C.F.R. § 287.3(c) and (d). (Doc. 1 at 7.) The record, however, establishes that Petitioner was arrested pursuant to a warrant. The Form I-213 states that the officers who approached Petitioner "had a signed Form I-200, Warrant of Arrest, for EVANS," and that they told him they had a warrant for his arrest. (Doc. 7-2 at 3.) Because a warrant issued, the provisions Petitioner invokes do not apply.

In addition, an unlawful arrest would not entitle Petitioner to release from custody or to termination of his removal proceedings. The "object [of a writ of habeas corpus] is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892); *see also INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Sormunen v. Nagle*, 59 F.2d 398, 398-99 (9th Cir. 1932) (holding that a detainee's contention that he was taken into custody without a warrant was "immaterial" in a petition for writ of habeas corpus where the detainee was lawfully subject to detention under the relevant immigration statute); *Garcia Juarez v. Larose*, No. 3:26-cv-03991-LEK-MMP, 2026 WL 2297000, at *4 (S.D. Cal. Aug. 10, 2026) (stating that "even if Petitioner's arrest was unlawful, release is not a remedy for an unlawful immigration arrest"); *Rodrigues De Oliveira v. Joyce*, No. 25-291, 2025 WL 1826118, at *5 (D. Me. July 2, 2025) ("Petitioner's argument that an illegal arrest automatically results in an illegal detention is misguided . . . [E]ven if Petitioner's initial arrest was unlawful, her detention pending removal may stand."). Ground Two is denied.

**E. Ground Three: Petitioner's Detention Has Not Become Unconstitutionally Prolonged**

Ground Three alleges that Petitioner's detention has become unconstitutionally prolonged. (Doc. 1 at 7.) The Reply relies on *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 17 at 2, 4.) *Zadvydas* construed 8 U.S.C. § 1231(a)(6), which governs detention after a removal order becomes final. Petitioner is not detained under that provision. As set out above, his detention is authorized by 8 U.S.C. § 1226(a), and nothing in the record indicates that he is subject to a final order of removal. *Zadvydas* therefore does not govern.

Detention under 8 U.S.C. § 1226(a) is not indefinite: it ends when the removal proceedings conclude. *Prieto-Romero*, 534 F.3d at 1063. Unlike the aliens in *Zadvydas*, Petitioner is not stuck in a "removable-but-unremovable limbo," *id.*, and he does not contend that Panama or Canada will refuse to accept him. It is true that Petitioner's "detention lacks a certain end date, but this uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in *Zadvydas*." *Id.*

The Ninth Circuit has sustained detention under 8 U.S.C. § 1226(a) for periods longer than the approximately twelve months at issue here. *See Rodriguez Diaz*, 53 F.4th at 1207-10 (remanding for dismissal of a § 1226(a) detainee's habeas petition where he had been detained for approximately fourteen months after his initial bond hearing); *Prieto-Romero*, 534 F.3d at 1063 (nearly three years).

To the extent Ground Three instead seeks the process that prolonged detention would require, that process is an individualized custody redetermination before an Immigration Judge, and Petitioner received two. Section 1226(a) and its implementing regulations afford a detained alien procedural protections, including a bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to seek a new hearing upon a material change in circumstances, and the right to appeal to the BIA. *Rodriguez Diaz*, 53 F.4th at 1197. Ground Three is denied.

**F. Ground Four: Petitioner's Admission as a Nonimmigrant Visitor Did Not Create a Protected Liberty Interest**

Ground Four alleges that Petitioner was deprived of a protected liberty interest because he was detained on October 14, 2025 without a pre-deprivation hearing. (Doc. 1 at 8.) The authorities on which the Reply relies are inapposite. (Doc. 17 at 10-12.) In *Morrissey v. Brewer*, the Supreme Court held that a parolee retains a protected interest in his continued liberty, and that the government must provide process before revoking it. 408 U.S. 471, 482 (1972). The district court decisions cited in the Reply apply the same principle to aliens whom the Government released from immigration custody—on bond, on parole, or on an order of supervision—and later re-arrested. In each, the protected interest arose from a release.

Here, contrary to Petitioner's characterization, his admission at the Nogales port of entry was not a release from custody. *See Okoth v. Kaiser*, No. 1:25-cv-01936-KES-SAB, 2026 WL 45199, at *2 (E.D. Cal. Jan. 7, 2026) (alien who lawfully entered on a visa, overstayed, and was detained for the first time in removal proceedings had no right to a pre-deprivation hearing because he "was not previously granted release by immigration authorities"); 8 U.S.C. § 1101(a)(13)(A) (defining an admission as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer"). He was inspected and admitted as a nonimmigrant visitor on January 24, 2025, with authorization to remain until January 26, 2025. (Doc. 7-1 at 2; Doc. 7-2 at 4.) He had not been in immigration custody before October 14, 2025, and he had not been released on bond or parole. (Doc. 7-2 at 4.) Unlike the parolee in *Morrissey* or the aliens in the decisions the Reply cites, Petitioner had no prior liberty determination for Respondents to revoke. Ground Four is denied.

Therefore,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus (Doc. 1) is **denied in part** and **dismissed in part**, as set forth below.

**IT IS FURTHER ORDERED** that Ground One of the Petition is **dismissed without prejudice** for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that Grounds Two, Three, and Four of the Petition are **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment accordingly and close this case.

Dated this 7th day of October, 2026.

Honorable John J. Tuchi
United States District Judge